**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0420-15T2

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

DARRELL R. CRONE, a/k/a DARRYL
GRIER, DARNELL RASHAWN,
DARRELL R. GREER, and DARRELL
G. CRONE,

     Defendant-Appellant.

_____

        Submitted September 24, 2018 – Decided October 2, 2018

        Before Judges Fasciale and Rose.

        On appeal from Superior Court of New Jersey, Law Division, Camden County, Indictment No. 14-09-2774.

        Jill R. Cohen, attorney for appellant.

        Gurbir S. Grewal, Attorney General, attorney for respondent (Evgeniya Sitnikova, Deputy Attorney General, of counsel and on the brief).

PER CURIAM

Defendant appeals from his convictions for first-degree aggravated manslaughter, N.J.S.A. 2C:11-4(a)(1); first-degree attempted murder, N.J.S.A. 2C:5-1 and N.J.S.A. 2C:11-3(a)(1)(2); second-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(a); second-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(b); and second-degree certain persons not to have weapons, N.J.S.A. 2C:39-7(b). We affirm.

On appeal, defendant argues:

> POINT I
> THE . . . [JUDGE] IMPROPERLY INQUIRED INTO DEFENSE COUNSEL'S TRIAL STRATEGY, WHICH VIOLATED THE ATTORNEY-CLIENT PRIVILEGE (not raised below).
>
> POINT II
> THE LEAD DETECTIVE FROM THE PROSECUTOR'S OFFICE SHOULD NOT HAVE BEEN ALLOWED TO NARRATE FOR THE JURY WHAT HE BELIEVED THE VIDEO SURVEILLANCE DEPICTS (not raised below).
>
> POINT III
> THE INTRODUCTION OF THE PHOTOGRAPH OF DEFENDANT WEARING A BRACELET IDENTICAL TO S-1 AFTER TWO WEEKS OF TESTIMONY AND IMMEDIATELY PRIOR TO THE CLOSE OF THE STATE'S CASE WAS AN IMPROPER DISCOVERY VIOLATION, SO AFFECTING THE OUTCOME THAT THE CONVICTION SHOULD BE OVERTURNED [(raised below)].

A. The evidence of the photograph should also have been barred as it only came to existence because the sister-in-law of the deceased had sat through the trial and independently did research into the case and produced the objectionable photograph only to help the State bolster [its] case, in violation of the [judge's] sequestration order (not raised below).

B. Counsel was ineffective in not telling the judge that his strategy would have been different if he had known about the picture earlier as the [j]udge would have excluded the evidence if he indicated that his strategy would have been different (not raised below).

POINT IV
THE JURY INSTRUCTION THAT WAS GIVEN TO THE JURY DID NOT ACCURATELY PROTECT THE DEFENDANT'S RIGHTS (not raised below).

POINT V
THE LOWER COURT INCORRECTLY CHARGED THE JURY ON THE USE OF THE HANDGUN TESTIMONY AS THERE WAS NO BASIS TO CONSIDER A CURATIVE CHARGE UNDER N.J. RULES OF EVIDENCE 404(b) (not raised below).

POINT VI
THE [JUDGE] IMPROPERLY CONDUCTED A CHARGE CONFERENCE WITHOUT THE DEFENDANT'S PRESENCE (not raised below).

POINT VII
COUNSEL'S CUMULATIVE ERRORS WERE IN PLAIN ERROR, LED TO AN UNJUST RESULT, AND HAD HE NOT COMMITTED THE ERRORS,

A-0420-15T2

THE VERDICT WOULD HAVE BEEN DIFFERENT
(not raised below).

> A. Counsel was ineffective for cross[-]examining Dominique Sheppard with the numerous inconsistencies as a refreshed recollection instead of introducing it as a prior inconsistent statement which would be substantive evidence (not raised below).

> B. Counsel was also ineffective in failing to object to repeated hearsay introduced by the state throughout the trial (not raised below).

Each of defendant's arguments, with the exception of defendant's argument in Point III, are raised for the first time on appeal. We review these arguments for plain error. R. 2:10-2. "Any error or omission shall be disregarded by [this court] unless it is of such a nature as to have been clearly capable of producing an unjust result[.]" Ibid. In a jury trial, the possibility of such an unjust result must be "sufficient to raise a reasonable doubt as to whether the error led the jury to a result it otherwise might not have reached." State v. Macon, 57 N.J. 325, 336 (1971). Defendant carries the burden of showing plain error. State v. Morton, 155 N.J. 383, 421 (1998).

We begin by rejecting defendant's argument that the judge improperly inquired into defense counsel's trial strategy. Defendant contends that in response to defense counsel's objection to the admission of a photograph not

A-0420-15T2

produced in discovery but introduced by the State on the last day of the State's case, the judge improperly inquired into defense counsel's trial strategy – impinging on defendant's attorney-client privilege and work-product privilege. The photograph showed defendant with another individual. In the photograph, defendant appears to be wearing a bracelet that was found at the crime scene and previously moved into evidence.

When the State moved to admit the photograph, defense counsel objected on the basis of prejudice. The judge inquired whether defense counsel would have proceeded differently had counsel known about the photograph prior to trial, because counsel did not object or make a prejudicial effect argument when the State initially entered the bracelet into evidence. When defense counsel objected due to the lateness of the photograph and informed the judge that he might have objected to the bracelet being admitted into evidence had the photograph been produced earlier, the judge expressed the same lateness concern, but then asked, "[s]o you would not have tried your case any differently had you had the photograph other than objecting to it? We would be in the same situation is what you're telling the [c]ourt?" Defense counsel responded, "as far as I can think off the top of my head, besides objecting to maybe the bracelet coming in, I don't know of anything else specifically at this moment." The judge

5

then repeatedly offered to provide defense counsel with time to think about his response, but counsel denied the offers and instead stated that he would have tried to locate the other individual in the photograph.

The judge then conducted an N.J.R.E. 104 hearing, where the woman who produced the photograph to the State – who was also the victim's sister-in-law – testified that she found the photograph on Facebook that morning. Before ruling, the judge required the State to make all attempts to produce the other person identified in the photograph for defense counsel. The State produced the individual in less than two hours, and defense counsel confirmed that he spoke with the individual, but again objected to the photograph being admitted on the grounds of lateness and prejudice. He did not articulate how it was prejudicial.

To understand defense counsel's objection, the judge repeatedly asked how counsel's cross-examinations and trial preparation would have been different. Defense counsel did not object to the judge's questions, and in response, asserted that other than objecting to the bracelet entering evidence, he would not have done anything differently. After conducting an N.J.R.E. 104 hearing with the individual in the photograph, the judge admitted the photograph into evidence.

The judge's questions did not improperly inquire into counsel's trial strategy, but instead provided counsel with opportunities to explain his objection. As the judge explained, "[e]vidence by nature is prejudicial," and defense counsel only made a "blanket statement" that the photograph was prejudicial. In his oral ruling, the judge explained that he questioned defense counsel about how the photograph was prejudicial, directed him to take time to think about it, and provided him with the opportunity to argue the prejudicial effect. The judge thoroughly explained his reasoning, and even supplemented the record with an additional explanation during the following trial day. Thus, he did not commit plain error.

We next turn to defendant's contention that the judge improperly permitted the photograph into evidence, and review that ruling for an abuse of discretion, due to defense counsel's objection at trial. State v. Marrero, 148 N.J. 469, 483-84 (1997). Defendant's reliance on N.J.R.E. 615, governing the sequestration of witnesses, as well as Rule 3:13-3, governing discovery, is misplaced.

N.J.R.E. 615 permits a judge to "enter an order sequestering witnesses," in an effort "to prevent prospective witnesses from hearing what the other witnesses detail in their evidence, 'for the less a witness hears of another's

testimony the more likely is he to declare his own knowledge simply and unbias[]ed,'" State v. DiModica, 40 N.J. 404, 413 (1963) (quoting State v. Zellers, 7 N.J.L. 220, 226 (Sup. Ct. 1824)). "Absent a clear showing of prejudice[,] an inadvertent violation of a sequestration order does not trigger automatic exclusion of the witness' testimony." State v. Williams, 404 N.J. Super. 147, 160 (App. Div. 2008).

The woman, as the victim's family member, was present for a few days of the trial, and was never an intended witness. There was no reason for her to be sequestered from the courtroom, and she was properly present as an observer. "There should be no exclusion of testimony where, as here, there was no intention to call the witness at the time he or she was in the courtroom as an observer[.]" State v. Dayton, 292 N.J. Super. 76, 91 (App. Div. 1996).

Rule 3:13-3(f) confers a continuing obligation on the State to provide discovery. The State provided the photograph to defense counsel immediately after the State came into possession of it, and further produced the woman for defense counsel. The judge offered counsel time to think about and elaborate on his objection, which he declined; gave defense counsel an opportunity to speak with the woman; and conducted two N.J.R.E. 104 hearings. At the first hearing, the woman explained that she found the photograph that morning while

8

scrolling through Facebook. She explained that she found the photograph relevant "[b]ecause [defendant] had the bracelet on that I seen in the [c]ourt from the previous days, and when [another witness] was describing him, he had the goatee and everything."

The judge was satisfied that the State had no previous knowledge of the photograph, and considered defense counsel's position that he would have done "nothing differently" if he had the photograph earlier. A review of the record reveals no evidence to indicate that the judge abused his discretion in allowing the photograph into evidence.

We see no error as to defendant's argument that improper hearsay and improper lay or expert opinion resulted when the detective provided the jury with narration of video surveillance of the incident where the victim was fatally shot.[1] During the trial, the detective testified based on his personal observations of the video while it simultaneously played in court for the jury. In response to the State's questions, the detective noted occurrences in specific time frames. The State repeatedly informed the judge that the detective's observation testimony was meant to establish the record. Defense counsel did not object to this line of questioning.

---

[1] The parties did not produce the video on appeal.

Defendant relies on State v. McLean, 205 N.J. 438 (2011), to assert that the detective did not provide lay opinion, and instead improperly acted as an expert. Lay opinion testimony is governed by N.J.R.E. 701, which permits lay witness testimony "in the form of opinions or inferences . . . if it (a) is rationally based on the perception of the witness and (b) will assist in understanding the witness' testimony or in determining a fact in issue." The opinion testimony of police officers, who are not called as experts, must be "firmly rooted in the [officers'] personal observations and perceptions" as lay witnesses. McLean, 205 N.J. at 459. However, expert or lay opinion "is not a vehicle for offering the view of the witness about a series of facts that the jury can evaluate for itself . . . ." Id. at 462.

The detective's testimony did not exceed the bounds of permissible lay opinion testimony, but instead satisfied both prongs of N.J.R.E. 701. First, the detective described what he observed in the video based on his own perception. See id. at 459. The jury was able to watch the same footage that the detective was observing and could evaluate the detective's credibility. Second, the detective's testimony assisted the jury in ascertaining the significance of various individuals' movements in the video. The video was lengthy, spanning many hours, and the detective's testimony during specific clips provided the jury with

10

a manageable play-by-play description. His testimony provided for the development of the record.

"Moreover, any prejudice arising from [the detective's] [testimony] was dissipated by the jurors' ability to view and review the videotapes for themselves." State v. Loftin, 287 N.J. Super. 76, 100 (App. Div. 1996). The jury watched the video without explanatory testimony throughout the trial, including during the parties' closings. Further, during jury deliberations, the jury requested to watch various clips of the surveillance video, and the judge properly satisfied those requests.

Defendant also asserts that the detective improperly identified defendant as the shooter in the surveillance video. This contention is meritless. The detective did not identify defendant in the surveillance video, but instead testified that in the early phases of the investigation, in which he conducted many interviews, he tentatively suspected defendant as the shooter. During the detective's direct examination, the judge asked counsel to approach sidebar and asked the prosecutor to ensure that the detective was not going to identify anyone in the video, which the prosecutor did and further explained that the detective did not know defendant. On cross-examination, defense counsel improperly stated that the detective previously identified defendant in the video,

eliciting an objection from the State, and requiring the judge to clarify "for the record, the defendant was never identified by [the detective] as the person in the video."

We see no plain error concerning the detective's testimony that brought about "an unjust result and which substantially prejudiced . . . defendant's fundamental right to have the jury fairly evaluate the merits of his defense." State v. Timmendequas, 161 N.J. 515, 576-77 (1999) (quoting State v. Irving, 114 N.J. 427, 444 (1989)) (internal quotation marks omitted).

We reject defendant's assertion that the judge incorrectly charged the jury regarding a witness's testimony that she previously observed defendant with a weapon. Defense counsel elicited the testimony on cross-examination. The judge instructed the jury:

> [O]ur rules do permit evidence of other crimes, wrongs, or acts under certain circumstances. You may not, however, under any circumstance use this evidence to decide that the [d]efendant has a tendency to commit crimes or that he is a bad person.
>
> That is, you may not decide that just because the [d]efendant has committed other crimes, wrongs, or acts, he must be guilty of the present crimes.

Defense counsel did not object, and failed to request a curative or limiting instruction. "Alleged errors induced by counsel 'ordinarily are not a basis for

12

reversal on appeal.'" State v. Yough, 208 N.J. 385, 399 (2011) (quoting State v. Corsaro, 107 N.J. 339, 345 (1987)). The judge properly instructed the jury not to consider the testimony as propensity evidence, as prohibited under N.J.R.E. 404(b). Regardless of this testimony, the State presented substantial evidence to allow a reasonable jury to find defendant guilty, including witness identification, surveillance video, and physical evidence.

We will not entertain defendant's claim that trial counsel was ineffective on direct appeal. "Our courts have expressed a general policy against entertaining ineffective-assistance-of-counsel claims on direct appeal because such claims involve allegations and evidence that lie outside the trial record." State v. Preciose, 129 N.J. 451, 460 (1992). Courts "routinely decline to entertain ineffective-assistance-of-counsel claims on direct appeal . . . ." State v. Hess, 207 N.J. 123, 145 (2011).

To the extent defendant argues his trial counsel rendered ineffective assistance of counsel, the record is not sufficiently developed and is better suited for a post-conviction relief application. State v. Wiggins, 291 N.J. Super. 441, 452 (App. Div. 1996). The resolution of defendant's arguments requires an inquiry into why counsel proceeded in the manner he did, and whether those decisions were the result of trial strategy. Strickland v. Washington, 466 U.S.

668, 689 (1984).  Accordingly, this claim would be better raised in a petition for post-conviction relief.

We conclude defendant's remaining arguments to be without sufficient merit to warrant discussion in a written opinion.  <u>R.</u> 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION